UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAQUEL DAVIS, | ) | CASE NO. 1:23-cv-1488 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| WALMART, INC., | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | |

Before the Court is Defendant Walmart, Inc.'s ("Walmart") Motion for Judgment on the Pleadings.  (ECF No. 13).  Plaintiff Raquel Davis filed a timely opposition, (ECF No. 26), and Defendant filed a reply in support of its motion, (ECF No. 26).  For the reasons discussed below, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

## I.  PROCEDURAL BACKGROUND

On July 31, 2023, Plaintiff filed her initial complaint against Walmart.[1]  (ECF No. 1).  This action arises out of an incident on August 29, 2021, where Plaintiff was attempting to leave a Walmart store after completing a purchase but was stopped and detained by Walmart employees based on suspected shoplifting.  (*Id.* at PageID #6–8).  Plaintiff asserts nine claims: (i) racial discrimination, in violation of 42 U.S.C. § 1981 (Count One); (ii) discrimination, in violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a (Count Two); (iii) deprivation of rights, in violation of 42 U.S.C. § 1983 (Count Three); (iv) false imprisonment (Count Four); (v) intentional infliction of emotional distress (Count Five); (vi) misrepresentation (Count Six); (vii) defamation

---

[1] The complaint incorrectly named Defendant as Walmart Stores Inc, (*See* ECF No. 1, PageID #1).  This error was later corrected in the amended complaint, which named Defendant as Walmart, Inc.  (*See* ECF No. 13, PageID #62).

(Count Seven); (viii) "Negligently Participating in a Wrongful Prosecution"; and (ix) "Negligent Asset Protection Policies and Procedures." (*Id.* at PageID #9–17).

On November 17, 2023, Plaintiff filed an amended complaint to correctly name Walmart, but Plaintiff did not otherwise alter or expand the allegations or causes of action in the initial complaint. (*Compare* ECF No. 13, *with* ECF No. 1). On November 30, 2023, Walmart filed an answer to the amended complaint. (ECF No. 16).

On February 7, 2024, Walmart filed the instant Motion for Judgment on the Pleadings, seeking dismissal of Plaintiff's claims. (ECF No. 21). On March 7, 2024, Plaintiff filed her Brief in Opposition to Walmart's Motion. (ECF No. 23). On March 21, 2024, Walmart filed its Reply in Support of the Motion. (ECF No. 26).

## II.    FACTUAL BACKGROUND

### A.    Walmart's Asset Retention and Loss Prevention Policies[2]

Walmart is a member of several national retailer organizations, including the Retail Leaders Association and Loss Prevention Research Council ("LPRC"). (*Id.* at PageID #65). "Walmart drafts, discusses, and implements techniques and procedures in accordance with the LPRC's guidelines." (*Id.*). Each location owned by Walmart employs "Asset Protection Specialists" who "are trained to follow corporate policies, procedures, and guidelines concerning employee theft, general security, and retail theft." (*Id.*).

As part of their job, Asset Protection Specialists collect and compile data of suspected shoplifters, typically from a suspect's driver's license. (*Id.* at PageID #65–66). Walmart trains Asset Protection Specialists to: (i) first, "detain the individual in an office or room, take their

---

[2] The factual allegations that follow are contained within Plaintiff's amended complaint. (ECF No. 13).

license, and place the information they acquire into a database"; and (ii) then "determine whether the individual suspected of shoplifting should be prosecuted." (*Id.* at PageID #66).  If an Asset Protection Specialist deems a suspect to have shoplifted, "that individual is either arrested or summoned to appear at the appropriate tribunal in that particular jurisdiction." (*Id.*).  "Walmart Asset Protection Specialists have full control over who and under what circumstances to pursue criminal charges against." (*Id.*).

Plaintiff asserts that Walmart's policies, procedures, and guidelines, as well as the data collected on suspected shoplifters at their various locations, indicate: (i) "racial bias, as demonstrated by the fact that the vast majority of those prosecuted under these guidelines are African American"; (ii) "individuals suspected of shoplifting that are white are far less likely to be prosecuted than those individuals who are African American"; and (iii) "Walmart Asset Protection Specialists target African Americans in a fashion that violates their civil rights." (*Id.* at PageID #66–67).

### B.    The August 29, 2021 Incident

On August 29, 2021, Plaintiff, a 28-year-old African American woman, was shopping at a Walmart location at 7245 Market Place in Bainbridge, Ohio with her minor daughter.  (*Id.* at PageID #67–68).  Plaintiff selected 15 to 18 items from the store's shelves and then walked to the self-checkout register.  (*Id.*).  Plaintiff scanned the items, paid for them with her credit card, and proceeded to the store's exit.  (*Id.*).  A Walmart Asset Protection Specialist, who was stationed at the exit to check shoppers' receipts, stopped Plaintiff from exiting the store and escorted her to a secured room within the store.  (*Id.*).  In the secured room, the Asset Protection Specialist accused Plaintiff of shoplifting, took her license, and questioned her about the alleged theft.  (*Id.*).

Plaintiff pleaded with the Asset Protection Specialist and other Walmart employees to not charge her with theft.  (*Id.*).  Plaintiff explained that she had not shoplifted, stated that she had not intended to shoplift, and offered to pay for any unscanned items.  (*Id.* at PageID #68–69).  Walmart employees ignored Plaintiff's assertions, as well as her offer to pay, and contacted local law enforcement who arrived shortly thereafter.  (*Id.* at PageID #69).  Walmart employees detained and interrogated Plaintiff for approximately two hours.  (*Id.*).  Plaintiff was allowed to leave the store but "was never allowed nor given the option to pay for the items she accidently failed to scan."  (*Id.*).

Sometime later, Plaintiff received a summons to appear at a local municipal court on a charge of theft.  (*Id.*).  "After hiring a criminal defense attorney and after several criminal court proceedings, the charges against [Plaintiff] were dropped for lack of evidence."  (*Id.*).  The incident and subsequent court proceedings caused Plaintiff to suffer mental and physical stress and "tarnished" her "good name."  (*Id.*).

## III.    LEGAL STANDARD

After the pleadings are closed, a party may move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is essentially a delayed motion to dismiss under Rule 12(b)(6) and is evaluated under the same standards.  *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (2021).  Because the standards are the same, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Solo v. UPS Co.*, 819 F.3d 788, 793 (6th Cir. 2016 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))).  Judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party,

the Court concludes that the moving party is entitled to judgment as a matter of law. *Anders*, 984 F.3d at 1174.  In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions.  *Holland v. FCA US LLC*, 656 F. App'x 232, 236–37 (6th Cir. 2016) (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

In deciding a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Id.* (quotation and citation omitted).  Conversely, "[m]ere labels and conclusions are not enough[.]"  *Engler*, 862 F.3d at 575.  Nor are facts that are "merely consistent with" liability.  *Bates*, 958 F.3d at 480 (quotation omitted).

## IV.  DISCUSSION

### A.  Count One – Discrimination in Violation of 42 U.S.C. § 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . ."  42 U.S.C. § 1981(a).  Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors."  *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)).  "The statute's protection extends to 'the making, performance, modification, and termination of

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship.'"  *Id.* (quoting 42 U.S.C. § 1981(b)).  To adequately plead a claim of racial

discrimination under § 1981, specifically in the context of a retail/commercial establishment case,

a plaintiff must allege sufficient facts to demonstrate that:

> (1) plaintiff is a member of a protected class;

> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and

> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian*, 252 F.3d at 872.

To sustain a claim under Section 1981, Plaintiff "must initially identify an impaired

'contractual relationship, under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*,

546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006) (internal citation omitted); *see also*

*Williams v. Richland County Children Services*, 489 F. App'x 848, 851 (6th Cir. 2012) (holding

that "a plaintiff must possess some contractual right that defendant blocked or impaired" to sustain

a claim under § 1981).  The Supreme Court has clarified that Section 1981 "offers relief when

racial discrimination" either: (i) "blocks the creation of a contractual relationship"; or (ii) "impairs

an existing contractual relationship."  *See Domino's Pizza, Inc.*, 546 U.S. at 476.

Walmart argues that Plaintiff's § 1981 claim fails as a matter of law because she has not

alleged facts demonstrating that Walmart actually prevented Plaintiff from making or enforcing a

contract.  (ECF No. 21, PageID #116–17).  Walmart notes that the amended complaint only alleges

that Walmart prevented Plaintiff from leaving the store with unpaid items and argues that it needed

to have taken "affirmative steps to actually prevent Plaintiff from making a purchase for Section

6

1981 to apply." (*Id.* at PageID #118). Plaintiff responds that she has a valid claim under § 1981 because Walmart prevented her from purchasing the items she allegedly stole after she offered to pay for them. (ECF No. 23, PageID #132–33). Plaintiff further argues that § 1981 can apply in instances where a purchase was consummated but a victim was subjected to continuous discriminatory conduct throughout or after the purchase process. (*Id.* at PageID# 133 (citing *Leach v. Heyman*, 233 F. Supp. 2d 906, 908 (N.D. Ohio 2002))). She contends that Walmart's discrimination and the period of racial animus "began from the moment she attempted to check out with her goods" and "continued until she finally left the store." (*Id.*).

The Court finds that Plaintiff has failed to assert a plausible claim for discrimination under § 1981. First, Plaintiff has failed to sufficiently allege that Walmart blocked the creation of a contractual relationship. Based on Plaintiff's own allegations, she was shopping at a Walmart store, selected items from the store's shelves, proceeded to the self-checkout register, scanned the items, paid for them with her credit card, and proceeded to the exit. (ECF No. 13, PageID #67–68). These allegations establish that Plaintiff and Walmart formed a contract as to the purchased items. Plaintiff also provides no allegations of racial discrimination before and during the purchase of these items.

In her opposition brief, Plaintiff argues that she was prevented from making a contract when Walmart rejected her offer to pay for the unscanned items. (ECF No. 23, PageID #132–33). The Court finds this argument unavailing. A claim under § 1981 requires that a plaintiff demonstrate that she sought to create a contract for "services ordinarily provided by the defendant." *See Christian*, 252 F.3d at 872. The amended complaint provides no allegations or assertions that Walmart "ordinarily" accepts offers from customers to pay for suspected shoplifted items. Plaintiff also provides no authority for the proposition that a retail defendant is liable under

7

§ 1981 for rejecting an offer to pay for items the defendant believes to be stolen, nor is the Court aware of such authority.

Second, Plaintiff has failed to sufficiently allege that Walmart impaired an existing contractual relationship.  As discussed above, there was no contract formed between Plaintiff and Walmart with respect to the alleged shoplifted items, nor did Plaintiff have any expectation or right to the formation of such a contract.  The Court finds that Walmart's actions in detaining and interrogating Plaintiff after she attempted to leave the store with unpaid-for items does not constitute an impairment of the existing contract between the parties for the purchased items.

Finally, Plaintiff contends that she can maintain her cause of action under § 1981 because the court in *Leach* determined that ongoing racial discrimination is sufficient to sustain a claim even when a purchase is consummated.  (ECF No. 23, PageID #133).  However, the facts in *Leach* are easily distinguishable from the facts in this case.  In *Leach*, the district court denied summary judgment on the plaintiff's § 1981 claim, even though the plaintiff successfully purchased items from a convenience store, because the defendant employee was rude and dismissive to the plaintiff before the purchase was completed and then the employee insulted, grabbed, and slapped the plaintiff while he was leaving the store.  *See* 233 F. Supp. 2d at 908–11.  The *Leach* court concluded that "a jury could find that [the defendant's] treatment of plaintiff was continuous, and manifested animus the entire period that he was in the store." *Id.* at 910.  Here, the amended complaint alleges that Plaintiff first suffered alleged discrimination when she was stopped at the store's exit on suspicion of shoplifting.  Plaintiff even concedes that she had failed to pay for at least one item when she attempted to leave the store.  (*See* ECF No. 23, PageID #132).  The pleadings contain no allegations that Plaintiff suffered racial discrimination or animus while she was shopping and

during the purchase of items at the self-checkout register.  These allegations do not demonstrate that Plaintiff suffered the same continuous, pervasive animus experienced by the plaintiff in *Leach*.

The Court further finds that *Leach* is inconsistent with both Sixth Circuit and other circuit precedent, adopting the reasoning set forth by the district court in *Jackson v. Walmart, Inc.*—a case presenting almost identical facts to those in the instant case:

> Additionally, the decision in *Leach* is inconsistent with the Sixth Circuit's decision in *Christian v. Wal-Mart Stores*.  In *Christian*, the Sixth Circuit had "no trouble" concluding that the plaintiff "made herself available to enter into a contractual relationship" with Walmart where "she selected merchandise to purchase, had the means to complete the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store."  252 F.3d at 874.  It was the fact that Walmart blocked the plaintiff from completing her purchase that gave rise to the plaintiff's Section 1981 claim in *Christian*.  As explained above, that is not the circumstance in this case—[the plaintiff] alleges that she completed her purchases.
>
> Further, the *Leach* decision is at odds with several other Courts of Appeals.  *See Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (holding that a Section 1981 claim requires that the plaintiff allege that the merchant "thwarted" an actual attempt to contract); *Lopez v. Target Corp.*, 676 F.3d 1230, 1235 (11th Cir. 2012) (affirming dismissal of a Section 1981 claim because the plaintiff "ultimately succeeded in purchasing his desired items from Target"); *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013) (affirming dismissal of a Section 1981 claim because the plaintiff did not allege that Kmart "hindered [her] from making and completing a layaway purchase.")[.]  Lastly, *Leach* (and *Christian*) were decided before the Supreme Court's decision in *Domino's Pizza*, which instructs that Section 1981 offers relief only where a defendant either blocks the creation of a contractual relationship or impairs an existing contractual relationship because of an individual's race.  546 U.S. at 476.

No. 1:23-cv-01110, 2024 U.S. Dist. LEXIS 87962, at *12–13 (N.D. Ohio May 16, 2024).

Accordingly, because Plaintiff has failed to state a plausible claim for relief under § 1981, Count One is **DISMISSED**.

### B.     Count Two – Discrimination in Violation of 42 U.S.C. § 2000a

Walmart argues that Plaintiff's claim under Title II of the Civil Rights Act fails as a matter of law because: (i) the statute provides only for injunctive relief; and (ii) Plaintiff's claims arise

out of a single incident and are therefore insufficient to warrant injunctive relief. (ECF No. 21, PageID #118–19). Plaintiff responds that Title II is merely silent on whether compensatory damages are available as relief and that plaintiffs can recover monetary damages under Title II "where it is shown that the discrimination in question was intentional." (ECF No. 23, PageID #134–35 (citing *Williams v. Hayman*, 657 F. Supp. 2d 488 (D.N.J. 2008); and *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir.2003))). As for the availability of injunctive relief, Plaintiff argues that she will continue to suffer irreparable harm because "[Plaintiff] is an African American and the unfortunate truth is that she runs near the highest risk of encountering discrimination every time she steps foot in a Walmart, let alone in her everyday life." (*Id.* at PageID #135–36).

First, Plaintiff may not seek monetary damages under Title II. "It is well established that plaintiffs pursuing relief under Title II cannot recover damages." *Leonard v. Bedrock Mgmt. Servs. LLC*, No. 21-3944/3945, 2022 U.S. App. LEXIS 9308, at *2 (6th Cir. Apr. 6, 2022) (citing 42 U.S.C. § 2000a-3; *Newman v. Piggie Park Enters, Inc.*, 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968); and *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 241 (6th Cir. 1990)). Plaintiff's reliance on *Williams v. Hayman* and *Nieves-Marquez v. Puerto Rico* is misplaced, as those cases involved Title II of the *Americans with Disabilities Act*, not Title II of the Civil Rights Act. *See Williams*, 657 F. Supp. 2d at 502; *Nieves-Marquez*, 353 F.3d at 112.

Second, to sustain a claim for declaratory or injunctive relief, a plaintiff must plead a present ongoing harm or an imminent future harm. *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020); *Simpson-Vlach v. Mich. Dep't of Educ.*, No. 22-1724, 2023 U.S. App. LEXIS 11542, at *9 (6th Cir. May 10, 2023). Plaintiff fails to assert any such harm in the amended complaint. The pleadings contain no allegations that she will return to

Walmart in the future or, more importantly, that she will suffer, or is likely to suffer, imminent harm when she returns to a Walmart store.  Courts in this circuit have dismissed claims under Title II of the Civil Rights Act in precisely these circumstances.  *See, e.g.*, *Jackson*, 2024 U.S. Dist. LEXIS 87962, at *14–15 (collecting cases).

In her opposition brief, Plaintiff argues that she runs a high risk of discrimination every time she enters a Walmart store.  But this argument is highly speculative, unsupported, and fails to establish standing to assert a claim for injunctive relief.  *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 966 (6th Cir. 2009) ("[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." (citations and internal quotation marks omitted)); *see also Brooks v. Collis Foods, Inc.*, 365 F. Supp. 2d 1342, 1352 (N.D. Ga. 2005) (dismissing a claim under Title II when the plaintiffs failed to make showing that that they were subject to any future harm "other than their speculation that they will be subject to discrimination at the Blue Ridge Waffle House or another Waffle House restaurant").  To the extent that Plaintiff might rely on her past experiences to establish standing, "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct."  *See Shelby Advocates for Valid Elections*, 947 F.3d at 981 (6th Cir. 2020) (citing O'Shea v. Littleton, 414 U.S. 488, 495–98, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); and *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).  Accordingly, Count Two is **DISMISSED**.

### C.     Count Three – Deprivation of Rights in Violation of 42 U.S.C. § 1983

Walmart argues that Count Three should be dismissed because Plaintiff's § 1983 claims do not apply to Walmart, a private entity, and the pleadings are "entirely devoid of any allegations that Walmart acted together with aid from state officials such that it could be sued as a government

11

entity under Section 1983, or that it was acting under the 'color of state law.'" (ECF No. 21, PageID #120–21).  Plaintiff responds that Walmart's actions in stopping, detaining, and interrogating Plaintiff constituted public functions that are traditionally conducted by the state, such that Walmart's "Asset Protection Team took on the role of the police." (ECF No. 23, PageID #137).  She further argues that Walmart acted "under color of law" based on the "totality of the circumstances." (*Id.*).

Section 1983 creates a private cause of action for deprivations of constitutional rights against private parties under certain circumstances.  *See Tahfs v. Proctor*, 316 F.3d 584, 590–91 (6th Cir. 2003).  To state a § 1983 claim, Plaintiffs must plead facts showing that: (i) the conduct was attributable to the person acting under color of state law; and (ii) the defendant's actions deprived the plaintiff of "'any rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Bell Mgmt. & Training Corp.*, 122 F. App'x 219, 222 (6th Cir. 2005) (quoting 42 U.S.C. § 1983).  If these elements are not demonstrated, then "'[a] plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct.'"  *Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir. 2007) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)); *see Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio 2010) (explaining that the absence of either element means that the § 1983 claim has not been pleaded).  Whether a party is a state actor is a question of law.  *Blum v. Yaretsky*, 457 U.S. 991, 996–98 (1982).

State action occurs when a defendant exercised power "possessed by virtue of state law **and made possible only because** the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (emphasis added).  Moreover, private conduct becomes state action under § 1983 when the conduct is "fairly attributable to the state." *Luger v. Edmondson Oil*

*Co.*, 457 U.S. 922, 947 (1982).  Federal courts use several tests for determining whether a defendant should be a state actor for the purpose of a § 1983 claim: the public function, state compulsion, and nexus tests are three of the most common.  *Wolosky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

In their briefs, both parties focus solely on the public function test.  (*See* ECF No. 23, PageID #136–37; ECF No. 26, PageID #164–65).  The public function test provides that private conduct is deemed state action when a private entity "exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003); *see Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974)).  The burden is on the Plaintiffs to prove, based on their factual allegations in the complaint, that there is a "reasonable inference" that the relevant functions performed by the private actor are traditionally relegated to the state.  *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (quoting *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) ("[T]he court must conduct a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing."))  "Simply alleging in a complaint that the [defendant] is a state actor . . . is no longer, if it ever was, sufficient to survive a motion to dismiss." *Id.* (citing *Iqbal*, 556 U.S. at 678).

The doctrine is interpreted narrowly, with only functions like holding elections, exercising eminent domain, and operating a company-owned town falling within its scope.  *Chapman*, 319 F.3d at 833–34 (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 157–58 (1978); *Jackson v. Metro. Edison Co.*, 417 U.S. 345, 352–53 (1974); *Marsh v. Alabama*, 326 U.S. 501, 505–09 (1946)); *see also Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 140 (6th Cir. 2023) ("But we interpret the

13

public-function test narrowly, and under it we rarely attribute private conduct to the state.").  The performance of private security functions—such as investigating crime or detaining suspected shoplifters—does not transform private security officers into state actors for purposes of § 1983.  *See Chapman*, 319 F.3d at 834 (citing, *inter alia*, *White v. Scrivner Corp.*, 594 F.2d 140, 142–43 (5th Cir. 1979)).

The Court finds that Plaintiff has not pled facts to support a reasonable inference that Walmart qualifies as a state actor under the public function test.  The crux of Plaintiff's argument is that Walmart's actions of stopping, detaining, and interrogating Plaintiff satisfies the public function test because Walmart's Asset Protection Specialists "took on the role of the police."  (*See* ECF No. 23, PageID #137).  The Sixth Circuit recognizes that private security guards may qualify as state actors under the public functions test when they are "endowed by law with plenary police powers such that they are *de facto* police officers."  *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 637 (6th Cir. 2005).  However, this principle does not apply in cases like this, "in which a private institution's security employees have been dispatched to protect the institution's interests or enforce its policies[,]" such as "when a store avails itself of the common law shopkeeper's privilege[.]"  *Id.* (citing *Chapman*, 319 F.3d at 833–34).  Furthermore, under Ohio statute, shopkeepers have the authority to temporarily detain suspected shoplifters.  *See* Ohio Rev. Code § 2935.041; *Hodges v. Meijer, Inc.*, 129 Ohio App. 3d 318, 322–24, 717 N.E.2d 806 (Ohio Ct. App. 1998).  Simply put, loss prevention efforts by a private security officer/employee, such as detaining or investigating a suspected shoplifter, do not transform a private entity into a state actor.  *See Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 343 (6th Cir. 2006); *Powell v. City of Radcliff*, No. 3:19-CV-00386-GNS-RSE, 2020 U.S. Dist. LEXIS 212555, at *6-7 (W.D. Ky. Nov. 10, 2020).

The amended complaint does not allege that Walmart's employees arrested Plaintiff, nor does it assert that Walmart's employees have the power to arrest shoplifters; it instead alleges that Walmart's employees contacted local law enforcement who later arrived at the store location—with Plaintiff able to leave the store soon thereafter. (ECF No. 13, PageID #69). But a private party contacting authorities and requesting "police assistance in the lawful exercise of self-help does not convert private action into state action." *Dressler v. Rice*, 739 F. App'x 814, 824 (6th Cir. 2018) (citing *Ellison v. Garbarino*, 48 F.3d 192, 197 (6th Cir. 1995) (further holding that a private security officer's "request to have [the plaintiff] charged with criminal trespass does not rise above the use of police assistance in the exercise of self-help."). As such, the amended complaint contains no allegations that Walmart and its employees exercised or were endowed with any powers exclusively reserved for the state. Thus, Plaintiff has failed to establish that Walmart qualifies as a state actor and cannot sustain a claim under § 1983. Accordingly, Count Three is **DISMISSED**.

### D.    Count Four – False Imprisonment

Walmart argues that Plaintiff's claim for false imprisonment under Count Four should be dismissed as a matter of law because it is barred by the applicable one-year statute of limitations under Ohio Rev. Code § 2305.11(A)—with the claim accruing upon Plaintiff's release from alleged confinement on August 29, 2021. (ECF No. 21, PageID #121). Plaintiff responds that her false imprisonment claim, as well as her intentional infliction of emotional distress and defamation claims, are not time-barred because they are extensions of her civil rights claims under Counts One through Three and are therefore governed by the statute of limitations for civil rights claims. (ECF No. 23, PageID #138–39). She seemingly argues that the two-year statute of limitations under Ohio's "general personal injury statute of limitations" should apply to her state-law claims

pursuant to the Supreme Court's holding in *Owens v. Okure*.[3]  (*Id.* at PageID #139).  Walmart argues that Plaintiff has misconstrued the holding in *Owens* because that case addressed what statute of limitations should be applied to federal claims governed by § 1983 and not the state-law tort claims, like those asserted under Counts Four (false imprisonment), Five (intentional infliction of emotional distress), and Eight (defamation).  (ECF No. 26, PageID #165–66).

The Court agrees that Plaintiff has misconstrued *Owens*.  In *Owens*, the Supreme Court was determining what specific state-law statute of limitations should apply for claims asserted pursuant to § 1983.  488 U.S. at 242–50.  The Sixth Circuit has held that the two-year statute of limitations for personal injury claims under Ohio Rev. Code § 2305.10 applies to all §1983 claims in Ohio.  *See Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023); *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc)).  But Plaintiff's claims for false imprisonment, intentional infliction of emotional distress, and defamation are not federal claims under § 1983, but are state-law tort claims that are governed by a corresponding state-law statute of limitations.

Claims for false imprisonment under Ohio law are subject to a one-year statute of limitations pursuant to Ohio Rev. Code § 2305.11(A).  *Davis v. Butler Cnty.*, Ohio, 658 F. App'x 208, 214–15 (6th Cir. 2016) (citing *Mayes v. City of Columbus*, 105 Ohio App. 3d 728, 746, 664 N.E.2d 1340 (Ohio Ct. App. 1995)); *see also Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012) (holding that claims of false imprisonment and false arrest under Ohio law were subject to a one-year statute of limitations under Ohio Rev. Code § 2305.11(A)).  A claim for false imprisonment under Ohio law generally accrues upon the plaintiff's release from confinement.

---

[3] 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989).

*Cummins v. Madison Corr. Inst.*, 2011-Ohio-1608, ¶ 8 (Ohio Ct. App. 2011) (citing *Robinson v. Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-550, 2011 Ohio 713, ¶14 (Ohio Ct. App. 2011); *O'Connor v. Kelty*, No. 4:10-cv-338, 2013 U.S. Dist. LEXIS 11265, at *29 (N.D. Ohio Jan. 23, 2013).

Plaintiff alleges that Walmart detained her for approximately two hours during the incident on August 29, 2021.  (ECF No. 13, PageID #69).  She also alleges that she was allowed to leave the store on that same day.  (*Id.*).  Thus, Plaintiff's claim for false imprisonment accrued on August 29, 2021.  Because Plaintiff did not file her initial complaint until July 31, 2023, nearly two years after her claim accrued, her claim for false imprisonment is barred by the one-year statute of limitation under Ohio Rev. Code § 2305.11(A).  Accordingly, Count Four is **DISMISSED**.

### E.  Count Five – Intentional Infliction of Emotional Distress

Generally, intentional infliction of emotional distress claims under Ohio law are governed by a four-year statute of limitations.  *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1013 (6th Cir. 2024) (citing *Yeager v. Loc. Union 20*, 6 Ohio St. 3d 369, 6 Ohio B. 421, 453 N.E.2d 666, 672 (Ohio 1983)).  "However, when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress." *Stafford v. Clever Investigations, Inc.*, 2007-Ohio-5086, ¶ 8 (Ohio Ct. App. 2007) (citing *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 536, 1994 Ohio 531, 629 N.E.2d 402 (Ohio 1994)).  In such circumstances, Ohio courts "look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *First United Methodist Church*, 629 N.E.2d at 407.

After reviewing the allegations in the amended complaint, the Court finds that Plaintiff's intentional infliction of emotional distress claim stems from her alleged false imprisonment by

Walmart's employees and shares the same essential character as her claim for false imprisonment. Plaintiff alleges that the actions of Walmart's Asset Protection Specialists in pursuing fraudulent theft allegations caused her emotional distress.  (ECF No. 13, PageID #74).  Plaintiff specifically alleges that the Asset Protection Specialists "detained [her] and interrogated her for approximately 2 hours, which led to emotional trauma for [her] and her minor child."  (*Id.* at PageID #69).  Thus, Plaintiff's intentional infliction of emotional distress claim arises out of her alleged false imprisonment by Walmart employees.  *See, e.g.*, *Crist v. Pugin*, No. 3:08 CV 501, 2008 U.S. Dist. LEXIS 49274, at *7–9 (N.D. Ohio June 25, 2008) (applying the one-year statute of limitations for a claim of intentional infliction of emotional distress that arose out of an underlying false imprisonment claim).  As a result, Plaintiff's claim for intentional infliction of emotional distress is subject to the one-year statute of limitations applied to her false imprisonment claim.

Claims for infliction of emotional distress accrue when the tort is complete, which is "at the time the injury is incurred and the emotional impact is felt."  *Dobrski v. Int'l Union*, No. 1:13-cv-1439, 2013 U.S. Dist. LEXIS 95415, at *13 (N.D. Ohio July 9, 2013) (quoting *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 514, 669 N.E.2d 65, 68 (Ohio Ct. App. 1995); and citing *Stewart v. Allen*, 2008-Ohio-1645, ¶ 22 (Ohio Ct. App. 2008)); *cf. Bremar v. Ohio Univ.*, 2022-Ohio-1382, ¶ 37 (Ohio Ct. App. 2022) ("A cause of action for intentional infliction of emotional distress accrues and the statute of limitations begins to run at the time the wrongful act is committed and the emotional impact is felt.").  Plaintiff's allegations demonstrate that the emotional impact and injury were incurred on the date of the incident—August 29, 2021.  Because the complaint was filed nearly two years after the claim accrued, Plaintiff's claim for intentional infliction of emotional distress is time-barred.  Accordingly, Count Five is **DISMISSED**.

### F.    Counts Six and Eight – Misrepresentation and "Negligently Participating in a Wrongful Prosecution"

Walmart argues that Plaintiff's claim for misrepresentation under Count Six fails as a matter of law and should be dismissed because the underlying facts of this case do not support a claim for either negligent or fraudulent misrepresentation under Ohio law.  (ECF No. 21, PageID #123–24).  Walmart further argues for dismissal of Count Eight because Ohio does not recognize a separate tort claim for "negligently participating in a wrongful prosecution."  (*Id.* at PageID #126.)

In her response, Plaintiff does not address Walmart's arguments for dismissal and essentially concedes that her claims for misrepresentation and negligently participating in a wrongful prosecution fail as a matter of law.  Instead, Plaintiff states that she "mistakenly and incorrectly" alleged separate claims for misrepresentation and participating in a wrongful prosecution when she actually intended to plead a single claim of malicious prosecution. (ECF No. 23, PageID #141).  Plaintiff "freely admits the error" regarding the mispleaded claims under Counts Six and Eight and asks the Court for leave to amend the pleadings to properly assert a malicious prosecution claim, citing Fed. R. Civ. P 15(a)(2).  (*Id.* at PageID #141–42).

Walmart opposes Plaintiff's request for leave to amend, arguing that she had ample time to request leave to amend, the pleading stage is now closed, and allowing leave now would be inappropriate and unfairly prejudicial to Walmart.  (ECF No. 26, PageID #167–68).  Walmart further argues that any malicious prosecution claim would also be time-barred as a matter of law.  (*Id.* at PageID #168).

The Court finds that amending the pleadings to add a claim for malicious prosecution would be futile because any such claim would be barred by the statute of limitations.  An Ohio claim for malicious prosecution is subject to a one-year statute of limitations pursuant to Ohio Rev.

Code § 2305.11(A).  *See* Ohio Rev. Code § 2305.11(A); *Ewing v. O'Brien*, 115 F. App'x 780, 783

(6th Cir. 2004); *O'Connor v. Kelty*, No. 4:10-cv-338, 2013 U.S. Dist. LEXIS 11265, at *31 (N.D.

Ohio Jan. 23, 2013).  Moreover, an Ohio claim for malicious prosecution accrues, and the statute

of limitation begins to run, at the termination of the prosecution in favor of the accused.  *See*

*Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St. 3d 286, 2007 Ohio 4161, 2007-Ohio 4161,

871 N.E.2d 1159, 1162 (Ohio 2007).

Although the amended complaint alleged that the criminal proceedings for theft relating to

the August 29, 2021 incident were ultimately resolved in her favor, it did not provide the date on

which the charges against Plaintiff were dropped.  (ECF No. 13, PageID #69).  The Court takes

judicial notice of court records from Chardon Municipal Court, which reflect that the relevant

criminal proceedings for theft against Plaintiff were resolved when the charge was dismissed on

January 3, 2022.  *See State of Ohio v. Davis*, Case No. 2021 CR B 00765.  Thus, Plaintiff's claim

for malicious prosecution accrued on January 3, 2022, and she was required to file her claim by

January 3, 2023.  Because the initial complaint was filed on July 31, 2023, any amended claim for

malicious prosecution would be barred by the statute of limitations.  Accordingly, Plaintiff's

request for leave to amend is **DENIED** and Counts Six and Eight are **DISMISSED**.

### G.    Count Seven – Defamation

Walmart argues that Plaintiff's claim for defamation is time-barred because it is subject to

a one-year statute of limitations under Ohio Rev. Code § 2305.11(A) and the claim accrued on the

date the alleged defamatory statements were spoken—August 29, 2021.  (ECF No. 21, PageID

#124).  Plaintiff responds that her defamation claim is not time-barred because any person looking

for information about Plaintiff is able to access the alleged libelous statements through "an online

docket or police blotter"; therefore, her defamation claim is not subject to the "single publication

rule" but the exception provided under the "traditional continuous publication rule."[4]  (ECF No. 23, PageID #139–40).  Walmart replies that the "traditional continuous publication rule" does not apply because: (i) Plaintiff alleges a claim of slander and the rule only applies to cases of libel; and (ii) even if the claim sounds in libel, Ohio courts have consistently refused to apply various continuous publication rules for defamation claims.  (ECF No. 26, PageID #166–67).

Under Ohio law, defamation claims are subject to a one-year statute of limitations.  *See* Ohio Rev. Code § 2305.11(A); *Friedler v. Equitable Life Assurance Soc'y of the United States*, 86 F. App'x 50, 53 (6th Cir. 2003).  For such claims, "[t]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Friedler*, 86 F. App'x at 53 (quoting *Sabouri v. Ohio Dep't of Job & Family Servs.,* 145 Ohio App. 3d 651, 763 N.E.2d 1238, 1240–41 (Ohio App. 10 Dist. 2001)) (internal quotation marks omitted); *see also Ziegler v. Findlay Indus.*, 380 F. Supp. 2d 909, 912 (N.D. Ohio 2005) ("In Ohio, defamation claims must be brought within one year after the defamatory words are first spoken or published, regardless of when the plaintiff learns of them.").  Notably, Ohio courts have consistently refused to adopt or apply a continuing publication rule for defamation claims.  *Krowiak v. BWXT Nuclear Operations Grp., Inc.*, No. 1:18 CV 629, 2018 U.S. Dist. LEXIS 184027, at *17–18 (N.D. Ohio Oct. 25, 2018) (collecting cases); *Spitzer v. Knapp*, 2019-Ohio-2701, 2019 Ohio App. LEXIS 2811 at *15–16 (Ohio Ct. App. July 1, 2019) (collecting cases); *see also Gentile v. City of Solon*, No. 1:12-CV-1657, 2013 U.S. Dist. LEXIS 3408, at *7–8 (N.D. Ohio Jan. 9, 2013) ("In fact, Ohio courts have consistently refused to apply any proposed continuing defamation rule, instead opting to apply the "first publication" rule.").

---

[4] Plaintiff also argues that her defamation claim was subject to a two-year statute of limitations under Ohio's personal injury statute of limitations.  (ECF No. 23, PageID #137–39).  As discussed above, Plaintiff's state-law claims (false imprisonment, intentional infliction of emotional distress, and defamation) are all subject to a corresponding state-law statute of limitations.

Thus, Plaintiff's defamation claim, whether it sounds in libel or slander, accrued on the date the alleged defamatory statements were first published. *See Friedler*, 86 F. App'x at 53. For her defamation claim, Plaintiff alleges that Walmart made false or misleading statements to law enforcement which triggered a court summons for a theft charge that was later made public on the court's docket. (ECF No. 13, PageID #76). Although Plaintiff did not specifically allege when Walmart provided the alleged false or misleading information to law enforcement, she alleges that law enforcement was contacted and arrived at the store's location on August 29, 2021. (*Id.* at PageID #69). The Court can infer that Walmart's employees first "published" the alleged defamatory statements at that time when they spoke to law enforcement officials. Using this date, the defamation claim would have accrued on August 29, 2021, and the statute of limitations would have elapsed on August 29, 2022. Because the initial complaint was filed on July 31, 2023, the claim is time-barred.

Even if the publication date for the court summons is used as the date of accrual, Plaintiff's defamation claim is still barred by the statute of limitations. Plaintiff does not allege the date that she received the court summons, simply stating she received the summons "[s]ometime later." (ECF No. 13, PageID # 69). Court records from the Chardon Municipal Court reflect that the relevant court summons was issued on September 14, 2021, and that there was proof of delivery to Plaintiff on September 22, 2021. *See State of Ohio v. Davis*, Case No. 2021 CR B 00765. Using either date as the "first publication," Plaintiff's defamation claim is time-barred because the initial complaint was filed more than one year after the claim would have accrued. Accordingly, Count Seven is **DISMISSED**.

**H.      Count Nine – "Negligent Asset Protection Policies and Procedures"**

Walmart argues that Plaintiff's claim for "Negligent Asset Protection Policies and Procedures" fails as a matter of law because Plaintiff failed to allege what duty was owed to Plaintiff with relation to Walmart's policies and procedures.  (ECF No. 21, PageID #125).  Alternatively, Walmart argues that if Plaintiff sufficiently alleged a duty, the claim would still fail because any duty that Walmart might owe to Plaintiff "is contractual in nature and does not sound in negligence."  (*Id.*).  Plaintiff responds that she was owed "a duty not to be subjected to discriminatory policies," and she sufficiently alleged that duty by alleging that Walmart's policies and procedures were discriminatory.  (ECF No. 23, PageID #142).  She further argues that the amended complaint alleges that Walmart was "negligent in the crafting of its policies and procedures, not whether they were followed, and this in turn led to the discrimination."  (*Id.* at PageID #142–43).  Walmart replies that "Plaintiff has failed to offer any legal authority supporting the notion that the way a policy is written can impose a legal duty upon the author of that policy."  (ECF No. 26, PageID #168).

Under Ohio law, a negligence claim requires a plaintiff to demonstrate: (i) "the existence of a duty"; (ii) "a breach of that duty"; and (iii) "an injury that was proximately caused by the breach."  *Rieger v. Giant Eagle, Inc.*, 157 Ohio St. 3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, 1125 (Ohio 2019).  "The failure to prove any one of these elements is fatal to a claim of negligence, . . ."  *Id.*  "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff."  *Wallace v. Ohio DOC*, 2002-Ohio-4210, 96 Ohio St. 3d 266, 773 N.E.2d 1018, 1026 (Ohio 2022) (quoting *Commerce & Industry Ins. Co.*, 45 Ohio St.3d at 98, 543 N.E.2d 1188,

1192 (Ohio 1989)). "[T]he duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case." *Id.* (citations omitted).

The Court finds that Plaintiff has failed to allege sufficient facts to plausibly support a negligence claim against Walmart. As an initial matter, Plaintiff's contention that she alleged Walmart was "negligent in the crafting of its policies and procedures" is not well-founded. The amended complaint is bereft of any allegations or theory that Walmart negligently crafted its policies, procedures, and guidelines. Plaintiff cannot amend her complaint by presenting this "negligent crafting" theory for the first time in her opposition brief. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."). Even if Plaintiff had asserted such a theory in the amended complaint, such a claim would still fail as a matter of law because: (i) there are no allegations or explanations as to what specific duty Walmart owed to Plaintiff when creating its internal policies; (ii) Plaintiff provides no citation to authority nor is there any indication that Ohio courts recognize such a duty; and (iii) there are no allegations or explanations as to how Walmart negligently crafted its policies— other than Plaintiff nakedly asserting the legal conclusion that they were negligently crafted.

In the amended complaint, Plaintiff alleges the following to establish her claim for negligence: (i) Walmart has "Asset Protection" policies, procedures, guidelines, and training programs that address shoplifting and illustrate what "Asset Protection enforcement should do if they suspect someone of stealing a product at a Walmart location"; (ii) these policies "are racist and target African American shoppers"; (iii) Walmart's Asset Protection Specialists followed these policies with respect to Plaintiff; and (iv) as a result, Plaintiff suffered humiliation, distress, pain, and suffering. (ECF No. 13, PageID #78). Once again, Plaintiff has failed to explain or provide

allegations as to what specific duty Walmart owed to Plaintiff.  She also presents no authority indicating that Ohio courts even recognize a duty for retailers to craft non-discriminatory policies.

Plaintiff argues that simply alleging that Walmart has racist and discriminatory policies is sufficient to sustain her claim and constitutes "a clear sign that the duty to guard against such policies is evoked."  (ECF No. 23, PageID #142).  Even if the Court were to accept that Plaintiff sufficiently alleged a duty of care in the amended complaint, the pleadings simply state that Walmart's policies are racist and discriminatory without providing any factual allegations in support.  Consequently, Plaintiff's allegations that Walmart's asset protection policies, procedures, and guidelines are racist and discriminatory amount to conclusory and unadorned assertions which are not entitled to a presumption of truth at this stage of the proceeding.  *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (finding that because some of the plaintiff's factual allegations were "not well-pleaded," "their conclusory nature 'disentitles them to the presumption of truth'") (quoting *Iqbal*, 556 U.S. at 681); *Harris v. Morris*, 2017 U.S. App. LEXIS 21425 at *8 (6th Cir. Oct. 26, 2017) (finding general allegations that certain professors and school officials were "racist" were conclusory and not entitled to the presumption of truth); *Kyrkanides v. Univ. of Ky.*, No. 5:19-CV-80-REW, 2019 U.S. Dist. LEXIS 200450, at *9 (E.D. Ky. Nov. 19, 2019) ("Unadorned, naked assertions warrant no presumption of truth and are not well-pleaded facts in the plausibility analysis." (citing *Iqbal*, 556 U.S. at 678)).  Accordingly, Plaintiff has failed to state a plausible claim for negligence and Count Nine is **DISMISSED**.

## V.  CONCLUSION

For the foregoing reasons, Walmart's Motion for Judgment on the Pleadings (ECF No. 21) is **GRANTED** and Plaintiff's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Date: June 20, 2024

_____

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**